UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| JON DEMERITT, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:16-cv-33-jgm |
| | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
|     Defendant. | : | |
| | : | |

MEMORANDUM AND ORDER
(Docs. 10, 13)

I.     Introduction

     Plaintiff Jon Demeritt (Demeritt) brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, requesting review and reversal of the Commissioner of Social Security's (Commissioner) denial of his application for disability insurance benefits and supplemental security income. Pending before the Court are Demeritt's motion seeking an order reversing the Commissioner's decision (Doc. 10 (Doc. 10-1 Memorandum)), and the Commissioner's motion seeking an order affirming her decision (Doc. 13). Demeritt filed a reply. (Doc. 18.) For the reasons set forth below, Demeritt's motion to reverse is granted and the Commissioner's motion to affirm is denied. The matter is remanded for further proceedings and a new decision.

II.     Background

    A.     Procedural

     On August 13, 2010, Demeritt filed an application for disability insurance benefits and supplemental security income, alleging he became disabled as of June 30, 2009. (A.R. 384-94.) On October 25, 2010, his applications were denied, id. at 192-99, and, on April 8, 2011, were denied

again on reconsideration, id. at 204-17.  Demeritt filed a timely request for an administrative hearing, id. at 219-21, which was held by Administrative Law Judge ("ALJ") Thomas Merrill on April 13, 2012, id. at 76-110.  Demeritt appeared with an attorney at the hearing and testified.  Id.  On May 4, 2012, the ALJ issued a decision concluding Demeritt was not disabled from the alleged disability onset date.  Id. at 173-82.  On July 8, 2013, the Appeals Council vacated the decision and remanded the case to the ALJ for further proceedings.  Id. at 189-90.

Accordingly, another hearing was held December 9, 2013, at which Demeritt did not appear though his attorney did, and a vocational expert testified, id. at 111-19, and a third hearing was held May 28, 2014, at which Demeritt appeared with an attorney and testified, id. at 120-42.  On July 21, 2014, the ALJ issued a second decision concluding Demeritt was not disabled.  Id. at 27-38.  On December 4, 2015, the Appeals Council denied his timely request for review, and the ALJ's decision became the final decision of the Commissioner.  Id. at 1-3, 22-23.

In February 2016, Demeritt timely filed this action.  (Docs. 1-3.)  He raises three challenges to the ALJ's decision:  (1) the ALJ erred by failing to find his depression was a severe impairment; (2) the ALJ erred by failing to properly consider his obstructive sleep apnea and fatigue; and (3) the ALJ's step five determination is not supported by substantial evidence.  (Doc. 10-1.)

B.      Medical History[1]

Demeritt was born October 12, 1966.  (A.R. 80, 384.)  He has a high school education[2] and past relevant work as a carpenter and construction worker.  Id. at 80, 101.  In 1985, Demeritt was

---

[1] The Court focuses on Demeritt's depression and sleep apnea rather than his ankle injuries as the issues raised on appeal do not pertain to his physical condition.  See Docs. 10-1, 18.

[2] Demeritt left school his junior year but obtained a GED in 1984.  (A.R. 80, 428).

2

injured in a work-related accident, suffering a crushed left ankle, and, in May 2010, broke the tibia and fibula on the same leg in a bicycling accident. Id. at 81, 84, 86, 124-25.

Demeritt's primary care physician was Dr. Jeffrey Rubman. He referred Demeritt to Dr. Mark Charlson, an orthopedist. In February 2009, Dr. Charlson noted his medications were oxycodone and percocet and he was alert, oriented, in no acute distress, with pleasant mood and affect. He diagnosed significant post-traumatic arthritis of the subtalar joint secondary to the calcaneous fracture and gave him an ankle brace. In May 2009, Demeritt reported to Dr. Charlson the brace improved him by about 65% though he still suffered swelling by the end of the day. Dr. Charlson provided another ankle stabilizer and a compression stocking to attempt to alleviate discomfort. (A.R. 705-07.)

In May 2010, when he presented to the hospital after his bicycle accident, he was described as pleasant, alert, oriented and in no distress and with normal mood, affect, behavior, judgment, and thought content. (A.R. 622-24.) On May 7, Demeritt underwent surgery and a plate and screws were inserted. Id. at 559. At follow-up with his surgeon four months after the surgery, Demeritt complained of pain and was using two crutches, the doctor noted he was alert, oriented and in no distress and the ankle was healed, and if the pain continued, he could seek a subtalar fusion. Id. at 703.

Also in September 2010, Dr. Rubman completed a mental status report noting Demeritt's appearance and hygiene were normal, behavior was appropriate, observed affect was mildly depressed, with no psychotic symptoms or suicidal ideation, normal orientation, attention, concentration and memory, energy level was low and ability to relate was good. (A.R. 642.)

In November, Dr. Rubman assessed possible sleep apnea and noted Demeritt's daytime fatigue. Id. at 672. In January 2011, Dr. Rubman referred Demeritt to the Vermont Medical Sleep

Disorders Center where he underwent a sleep study with Dr. Sabieli Kabeli. The results were "essentially normal" but it was a "suboptimal test." Dr. Kabeli indicated driving precautions should be exercised at all times. (A.R. 721-22.) In March 2011, a follow-up sleep study revealed severe obstructive sleep apnea syndrome. On examination, Demeritt was alert and oriented with appropriate mood, judgment and affect and able to ambulate unassisted and sit comfortably on the table but he had difficulty rising from a chair. Options for therapy included weight loss, an oral device, positional therapy, CPAP therapy, and pharyngeal surgery. Id. at 717-18. In April, he returned for a CPAP titration study. Dr. Kabeli's impression was dyssomnia, intrinsic sleep disorder, and obstructive sleep apnea syndrome, severe. Id. at 715-16. Demeritt was instructed to avoid driving and operating dangerous equipment and prescribed a CPAP machine, id. at 714, but discontinued using it because "it doesn't work well for" him. Id. at 97-98.

In October, Dr. Rubman noted Demeritt feels he is unable to do work requiring mental function, remains unable to perform any physical labor, and was depressed. (A.R. 702.) In December, Dr. Rubman again noted Demeritt was feeling depressed. Id. at 741.

In March 2012, Dr. Rubman completed medical source statements of ability to do work-related activities. (A.R. 724-31.) Regarding Demeritt's mental capabilities, he opined Demeritt would have mild difficulty in carrying out complex instructions and ability to make judgments on complex work-related decisions, mild difficulty interacting appropriately with the public and moderate difficulty interacting appropriately with supervisors. He also noted fatigue caused by his sleep apnea. He did not opine regarding how often Demeritt would be absent from work. Id. at 724, 729-30. Regarding his physical capabilities, he opined Demeritt was "not functioning" in use of hands or feet, did not complete the section on postural activities, environmental limitations do not apply, and could not shop or walk a block at a reasonable pace on rough or uneven surfaces.

4

He could travel without a companion, ambulate without using a wheelchair, walker, two canes or two crutches, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care for personal hygiene, and sort, handle and use paper/files. He opined the limitations had or would last 12 consecutive months. He again did not opine regarding how often he would be absent, stating only "not working." Id. at 755-28 (the first two pages of the form are missing).

  C. <u>State Agency Medical Opinions</u>

  In September 2010, state agency consultant Dr. Ellen Atkins, Ph.D., opined Demeritt had no medically determinable impairment based on her review of medical records from June 30, 2009 through June 30, 2010 and July 26, 2010 through September 2010. (A.R. 643.) She noted he was seeing only Dr. Rubman for his depression, was afraid to take medicine and had not been referred for counseling, and had no social difficulties. His records did not include psychiatric condition or treatment. Id. at 655.

  In October 2010, Demeritt underwent a physical evaluation by Dr. Richard Morrison as part of the process to determine eligibility for disability benefits. (A.R. 666-68.) Dr. Morrison noted he was oriented but looked uncomfortable, supported himself with two canes, had normal range of motion in his neck, shoulders, elbows, knees and wrists with equal strong bilateral grip, and right-side paraspinal muscle spasm but no muscle atrophy. His left ankle was restricted in an almost fused position. Dr. Morrison's impressions were uncontrolled hypertension, pain and numbness in hands, chronic low back and left leg, foot and ankle pain, hammertoes on left foot, right hip pain, decreased mental functioning ability, COPD with emphysema, depression, chronic fatigue and generalized arthritis. He concluded: "He did have dexterity and the ability to handle small objects with his fingers and . . . his grip and strengths of both hands seem to be normal. Basically, if he

5

presented himself for employment in this condition with two canes I doubt if anybody would be interested in hiring him." Id. at 668.

In March 2011, Demeritt underwent a psychological evaluation by Raquel Ferns Lefebvre, a licensed psychologist, as part of the process to determine eligibility for disability benefits. (A.R. 677-79.) He reported past marriage counseling but denied current counseling and denied a history of mental health hospitalization. She noted Demeritt was on time, oriented, with good hygiene, appropriate dress, and depressed affect. He scored in the no cognitive impairment range on the Mini-Mental Status Exam but was not able to write a grammatically correct sentence. She diagnosed major depressive disorder, recurrent, moderate and assigned a GAF of 55, indicative of moderate symptoms. Id. She did not include any functional limitations in her assessment.

In April 2011, state agency consultant Dr. William Farrell, Ph.D., opined Demeritt had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, concentration, persistence or pace, and no episodes of decompensation. (A.R. 164.) Accordingly, he concluded Demeritt's major depressive disorder, recurrent moderate was not severe. Id.

Also in April 2011, state agency consultant Dr. Patricia Pisanelli, M.D., opined Demeritt had exertional limitations of occasionally lifting or carrying 20 pounds, frequently lifting and carrying ten pounds, stand and walk for a total of two hours, sit for six hours in a an eight-hour workday, and occasionally push and pull with left lower extremity and postural limitations of occasionally climbing ramps, stairs, ladders, ropes or scaffolds and occasionally balancing. He also had environmental limitations requiring avoiding concentrated exposure to vibration and hazards. (A.R. 165-67.) Dr. Pisanelli's assessment is dated April 8, 2011. There is no indication she reviewed Dr. Kabeli's March 30 or April 4 diagnoses of severe obstructive sleep apnea. See id. at 158-62.

6

Following the Appeals Council's remand in July 2013, the ALJ did not obtain any additional medical evidence from a medical expert.

D.  Hearing Testimony

At the first hearing, in April 2012, a vocational expert testified that someone with limitations consistent with Demeritt's limitations as determined in the RFC would be unable to perform Demeritt's past relevant work but could perform the jobs of addresser, appointment clerk, and surveillance system monitor--jobs that existed in significant numbers nationally and regionally. (A.R. 101-03.)  At the second hearing, in December 2013, a different vocational expert testified that the jobs of addresser, appointment clerk, and surveillance system monitor could be performed if a person needed an assistive device for ambulation.  Id. at 115-16.  The expert also testified if a person was off task more than 10%, in addition to normal breaks, over the course of a day, that would make it difficult to sustain employment.  Id. at 116.  Following Demeritt's testimony at the third hearing, including a substantial amount of testimony regarding the effects of his sleep apnea, the ALJ determined additional testimony from the vocational expert was not necessary because there had been no testimony to change the hypotheticals presented to the vocational expert.  Id. at 130-136, 139.

III.  Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

7

engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability claims. Butts v. Barnhart, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not, the ALJ determines whether the claimant has a "severe impairment." Id. §§ 404.1520(c), 416.920(c). If the ALJ finds the claimant has a severe impairment, the third step requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. §§ 404.1520(d), 416.920(d). A claimant is presumptively disabled if the impairment meets or equals a listed impairment. Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." Id. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, Butts, 388 F.2d at 383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

In reviewing the Commissioner's disability decision, the court limits its inquiry to a "plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the

8

record to support such a decision. 42 U.S.C. § 405(g). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Commissioner, as the trier of fact, resolves evidentiary conflicts and assesses credibility. See Richardson, 402 U.S. at 399. Under this "very deferential standard of review," once an ALJ has found facts, a court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." Brault v. Commissioner, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted); 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

IV.     Discussion

Demeritt asserts the ALJ erred by failing to find his depression was a severe impairment, by failing to properly consider his obstructive sleep apnea and fatigue, and in his step five determination. (Doc. 10-1.) The Commissioner contends that substantial evidence supports the ALJ's determinations and credibility assessment. (Doc. 13.)

In his second decision, on appeal here, the ALJ found Demeritt met the insured status requirements through June 30, 2010, had not engaged in substantial gainful activity since June 30, 2009, the alleged onset date, and had the severe impairment of status post left ankle fracture. (A.R. 27, 29-30.) He noted he also considered Demeritt's neck pain, alleged hand issues, sleep apnea, and depression but found those conditions to be nonsevere. Id. at 30-31. The ALJ found Demeritt did not have an impairment or combination of impairments that met or equaled a listed impairment. Id. at 31-32. The ALJ determined Demeritt retained the residual functional capacity to perform sedentary work except:

9

> he can lift and carry 20 pounds occasionally and 10 pounds occasionally and he can stand and walk for 2 hours in an 8 hour day and sit for about 6 hours in an 8 hour day. Further the claimant can occasionally push and pull with the left lower extremity, can occasionally climb and balance and has unlimited ability to perform other postural activities, should avoid concentrated exposure to vibration and hazards.

Id. at 32. While the ALJ determined Demeritt was unable to perform his past relevant work, considering his age, education, work experience, and RFC, he found he is capable of making a successful adjustment to other jobs existing in significant numbers in the national economy. Id. at 36-37. Accordingly, he found he was not disabled under the Social Security Act from June 30, 2009, through the date of the decision. Id. at 37.

Demeritt argues the ALJ erred in not determining his depression to be a severe impairment. (Doc. 10-1 at 6-10.) The ALJ relied on the state agency consultants' opinions and Demeritt's treatment records with Dr. Rubman to determine he experienced no more than mild limitation in functional areas and there was no record of any episode of decompensation. Accordingly, his diagnosed depression was not severe. The ALJ noted Demeritt took no medication for his depression and had no history of mental health treatment. (A.R. 30-31.) While Dr. Rubman opined Demeritt would have "moderate" difficulty interacting appropriately with supervisors, this opinion was not supported with a specific example or by his treatment notes. See Richardson, 402 U.S. at 399 (noting the Commissioner, as the trier of fact, resolves evidentiary conflicts). Dr. Lefebvre did not include any functional limitations in her assessment of Demeritt. Accordingly, the ALJ's determination that Demeritt's depression was not severe will not be overturned as it is supported by substantial evidence.

Secondly, Demeritt argues the ALJ erred in not determining his sleep apnea to be a severe impairment. (Doc. 10-1 at 10-12.) The ALJ's discussion of Demeritt's diagnosed obstructive severe sleep apnea is limited to the statement "claimant treats with a CPAP machine." (A.R. at 30.) The

ALJ conclusorily stated Demeritt's sleep apnea does not cause more than minimal limitation in his ability to perform basic work activities. This conclusion is not supported by substantial evidence. Demeritt's medical records and testimony demonstrate that treatment with a CPAP machine did not work for him and reveal ongoing daytime fatigue and difficulties sleeping. The assessment from the sleep center noted daytime fatigue and included instructions not to drive or operate heavy equipment. The April 2011 case analyses by state agency consultants Drs. Farrell and Pisanelli do not include sleep apnea as a medically determinable impairment. Id. at 163. The assessments are dated April 7-8. There is no indication the consultants reviewed Dr. Kabeli's March 30 or April 4 diagnoses of severe obstructive sleep apnea. See id. at 158-62. Accordingly, the ALJ's determination that Demeritt's diagnosed severe obstructive sleep apnea was not severe is not supported by substantial evidence in the record as there is specific opinion in the record as to whether it caused more than minimal limitation in his abilities. An ALJ has an affirmative duty to develop the record. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). Medical records should include statements about what a plaintiff can still do despite impairments and the Social Security Administration "will request a medical source statement about what you can still do." 20 C.F.R. § 404.1513(b). Here, the ALJ did not point to any medical records documenting what Demeritt's work-related limitations are or what he can still do despite his sleep apnea. His sole statement that Demeritt treats with a CPAP machine is insufficient and not supported by the evidence of record.

Even if the ALJ did not err in determining Demeritt's sleep apnea was not severe, remand would be appropriate because the ALJ failed to account for any limitations caused by his severe sleep apnea in his RFC. An RFC determination must account for limitations imposed by both

11

severe and nonsevere impairments.  20 C.F.R. § 404.1545(a)(2).  The Commissioner points out the record is "absent of any physical limitations resulting from Mr. Demeritt's sleep apnea." (Doc. 13 at 22.)  Again, the ALJ had an affirmative duty to develop the record, to seek medical opinions regarding what limitations Demeritt's severe sleep apnea caused, and to consider those limitations in formulating the RFC.  20 C.F.R. § 404.1513(b) (the Social Security Administration "will request a medical source statement about what you can still do.").  The record certainly contains evidence of daytime fatigue.  See, e.g., A.R. 666-68 (state agency consultative examiner Dr. Morrison assessed chronic fatigue).  Accordingly, because the ALJ failed to account for any functional limitations arising from Demeritt's severe obstructive sleep apnea when determining his RFC, the ALJ committed legal error.

Lastly, Demeritt argues the ALJ erred in his step five determination because the vocational expert did not testify that the jobs identified as jobs Demeritt could perform could be performed by an individual with a limited education or by an individual who cannot write a grammatically correct sentence.  (Doc. 10-1 at 12-14.)  The ALJ noted Demeritt's "limited" education (A.R. 36) but failed to note Dr. Lefebvre's statement that he was not able to write a grammatically correct sentence.  Compare A.R. 31 with A.R. 678.  As pointed out by Demeritt, the jobs of addresser, appointment clerk, and surveillance system monitor, identified as jobs he could perform, each include a writing component.  (Doc. 10-2 at 1 (Addresser) ("Write compound and complex sentences."), Docs. 10-3 at 1 and 10-4 at 1 (Appointment Clerk and Surveillance-System Monitor) ("Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.").)  In light of the Court's determination above to remand the case, and the potential for a revised RFC, the Court leaves it for the ALJ on remand to determine Demeritt's ability to perform the identified jobs.  The

Court also notes the second vocational expert's testimony that if a person were off task more than 10% of the day, he or she could not maintain employment.

V.      Conclusion

Because the ALJ's determination that Demeritt's severe obstructive sleep apnea is not severe is not supported by substantial evidence, and even if it is not severe, the ALJ failed to account for any functional limitations arising from his sleep apnea when determining the RFC, Demeritt's motion for an order reversing the decision of the Commissioner (Doc. 10) is GRANTED.  The Commissioner's motion seeking an order affirming her decision (Doc. 13) is DENIED.  The matter is remanded for further proceedings and a new decision in accordance with this ruling.

On remand, the Appeals Council shall remand the case to a different ALJ who shall further develop the record, reassess Demeritt's severe obstructive sleep apnea to determine whether the impairment is severe at step two of the sequential evaluation process, reassess his residual functional capacity in light of the evidence and in accordance with the regulations, consider his ability to perform the identified jobs in light of the reconsidered RFC, take any further action necessary to complete the administrative record, including further vocational expert testimony if required, and issue a new decision.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 19th day of April, 2017.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge